# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**DR. MEAGAN BOWER,**                        Case No. 3:18 CV 2502

    Plaintiff,

    v.                                   Magistrate Judge James R. Knepp II

**VILLAGE OF MARBLEHEAD,**
**OHIO,** *et al.***,**

    Defendants.                          MEMORANDUM OPINION AND ORDER


### INTRODUCTION

On October 30, 2018, Dr. Meagan Bower ("Plaintiff") brought this action asserting claims

under 42 U.S.C. §§ 1983, 1988, and state tort law, against Defendants the Village of Marblehead,

Ohio, the Village of Marblehead Police Department, Officer Christopher Suppelsa (individually

and in his official capacity), Officer Loren Welch (individually and in his official capacity), Chief

Casey Joy (individually and in his official capacity), Bridget Sowers, Paul Sowers, and Rhonda

Sowers. (Doc. 1). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties consented

to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule

73. (Doc. 40). The Court previously dismissed Plaintiff's claims against the Sowers defendants.

*See* Doc 43 (Memorandum Opinion and Order). Currently pending before the Court is remaining

Defendants' Motion for Summary Judgment (Doc. 65), to which Plaintiff responded (Doc. 68),

and Defendants replied (Doc. 70).

For the reasons contained herein, Defendants' Motion for Summary Judgment is granted.

**BACKGROUND**

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

At all times relevant, Plaintiff was a medical doctor who resided in Marblehead, Ohio. (Doc. 64, Meagan Bower Deposition, at 6, 37-40) (hereinafter "Bower Depo."). She was previously married to Defendant Paul Sowers, with whom she had two children, son Nick and daughter Defendant Bridget Sowers. *Id.* at 7-8. Paul Sowers since remarried Defendant Rhonda Sowers. *Id.* Rhonda Sowers was employed with the City of Marblehead, Ohio (Doc. 63, Officer Suppelsa Deposition, at 50) (hereinafter "Suppelsa Depo."). She and Plaintiff had a contentious relationship. *See* Doc. 64-5, Bower Depo., Ex. E (text messages exchanged between the two).

*January 2017 Police Visit*

On January 5, 2017, Defendant Officer Suppelsa of the Marblehead Police Department ("MPD") was dispatched to Plaintiff's residence to respond to a complaint of an aggressive intoxicated person. (Suppelsa Depo., at 39); (Doc. 63-2, Suppelsa Depo., Ex. 2) (police report). The dispatcher advised the phone line was still open and she could hear shouting in the background. (Doc. 63-2). At the scene, a second responding officer reported to Officer Suppelsa that Bridget Sowers was the 911 caller. (Doc. 63-2); (Suppelsa Depo., at 39). Plaintiff explained to officers that she had not been drinking at all, but was instead ill with the flu; she believed Bridget contacted police because she was worried Plaintiff was unresponsive. (Bower Depo., at 83, 86-87); (Doc. 63-2). Plaintiff was simply asleep and woke to Bridget slapping her in the face. (Bower Depo., at 83, 87). The police report, written by Officer Suppelsa, indicated Bridget was in tears and Plaintiff had a strong odor of alcohol about her person, though she reported that she "ha[dn't] had much, like nothing" to drink. (Doc. 63-2); *see also* Suppelsa Depo., at 40. Officer Suppelsa,

2

who had training in drug and alcohol detection, concluded Plaintiff was intoxicated. (Doc. 63-2); *see also* Suppelsa Depo., at 7, 47-48. Police had EMS dispatched to the scene as a precaution. (Suppelsa Depo., at 49); (Doc. 63-2). Plaintiff refused care when they arrived. (Bower Depo., at 87-88); (Doc. 63-2). Officer Suppelsa reported seeing an empty pill bottle in Plaintiff's home and noted she fell asleep in his presence. (Suppelsa Depo., at 40-41); (Doc. 63-2). Plaintiff explained that the pills were antibiotics. (Doc. 63-2). No arrests were made because Bridget denied a physical altercation took place. (Suppelsa Depo., at 48).

Plaintiff contacted MPD later that evening to report Bridget missing; Officer Suppelsa responded. (Suppelsa Depo., at 45-46); (Doc. 63-3, Suppelsa Depo., Ex. 3) (police report). Plaintiff did not remember making the call. (Bower Depo., at 92). Officer Suppelsa recalled that Plaintiff still smelled of alcohol and appeared to be intoxicated. (Suppelsa Depo., at 45-46). Bridget was ultimately located and returned home. *Id*. at 46.

At some point after the January incident, Rhonda Sowers told Officer Suppelsa that Plaintiff had a substance abuse problem. (Sowers Depo., at 43-45).

*June 2017 Parking Complaints*

At some point in June 2017, Plaintiff made a number of parking complaints to MPD regarding parking issues on her street. (Bower Depo., at 97-98). Officer Suppelsa responded to one such complaint and recommended she address the issue with her neighbors. (Suppelsa Depo., at 18-19); (Bower Depo., at 99). Unbeknownst to Officer Suppelsa, Plaintiff complained to the Mayor's office regarding his cavalier attitude towards the matter. (Suppelsa Depo., at 19-20);

(Bower Depo., at 101). Chief Joy went to the scene and repainted parking lines himself to resolve the problem. (Suppelsa Depo., at 19-20).

*November 2017 Police Visit*

On November 2, 2017, Plaintiff contacted MPD to report that her child – Bridget – was being unruly. (Doc. 65-1, Officer Welch Affidavit, at ¶3) (hereinafter "Welch Aff."). Paul Sowers also contacted MPD to report the incident. *Id.* at ¶2. Defendant Officers Welch and Suppelsa responded to the call. (Doc. 63-1, at 1, Suppelsa Depo., Ex. 1) (police report). In his report and affidavit, Officer Welch recounted Plaintiff's statement that she and Bridget had an argument during which Bridget pulled her hair. (Doc. 63-1, at 1); (Welch Aff., at ¶5). Plaintiff reported the argument began when Bridget confronted her about drinking alcohol; she denied any drinking took place. (Doc. 63-1, at 1); (Welch Aff., at ¶5); *see also* Bower Depo., at 111-12. At her deposition, Plaintiff reported Bridget tackled her from behind, sat on top of her, and thus, if she struck Bridget, it was in self-defense. (Bower Depo., at 112-13). She did not report this "whole story" to police in order to protect Bridget from being arrested. (Bower Depo., at 113-14). The altercation left bruises on Plaintiff's legs and forearms. (Bower Depo., at 116-20); *see also* Doc. 64-11, Bower Depo., Ex. K (photographs taken by Plaintiff five days after the incident). Officer Welch testified he did not observe any signs of physical injury on Plaintiff while on scene. (Welch Aff., at ¶5). Officer Suppelsa testified Plaintiff was intoxicated. (Suppelsa Depo., at 31). He based this conclusion on Plaintiff having an alcohol odor coming from her breath, bloodshot, watery eyes, and his observation of her "general demeanor". *Id.*

Bridget confirmed the argument started over Plaintiff's alcohol use; at some point, Bridget dumped out a cup of wine and went upstairs to her bedroom. (Doc. 63-1, at 1). She reported that Plaintiff followed and, after the two exchanged some words, Plaintiff slapped her across the face

4

with an open hand. *Id*. Bridget admitted to pulling Plaintiff's hair in response. *Id*. Bridget reported calling Paul Sowers to tell him what happened. *Id*. She gave a written statement to Officer Welch which mirrored his report of their conversation. *See* Doc. 63-1, at 4 (Bridget's written statement). While speaking with Bridget, Officer Welch observed red marks on Bridget's cheek consistent with a palm and finger prints. (Welch Aff., at ¶7). After hearing both Plaintiff and Bridget's accounts, Officer Welch decided to arrest Plaintiff for domestic violence. (Doc. 63-1, at 2).

Officer Welch further reported that, while he was outside speaking with Bridget, Plaintiff turned off all of the lights in the house and locked the front door. *Id.* After knocking on the door several times, he heard Plaintiff yell, "I'm in the shower". *Id*. He told her to open the door and that he needed to speak with her. *Id*. After "a very long wait", Plaintiff peeked her head out of the door. *Id*.; (Welch Aff., at ¶14). Plaintiff recalled showering while police were on scene and answering the door in a towel. (Bower Depo., at 120-24). Officer Welch reported that he told Plaintiff he was coming inside; she tried to shut the door. (Doc. 63-1, at 2). Officers Welch and Suppelsa pushed through the door and told Plaintiff she was being arrested for domestic violence. *Id*. The three retreated to Plaintiff's bathroom so she could get dressed. (Doc. 65-1, at ¶14); (Doc. 63-1, at 2). Plaintiff ignored repeated commands to get dressed; she began drying her hair. (Doc. 65-1, at ¶14). After several more commands to get dressed, officers placed Plaintiff in handcuffs. (Doc. 63-1, at 2); (Welch Aff., at ¶14). At her deposition, Plaintiff maintained that Officer Welch then transported her to jail. *See* Bower Depo., at 127 ("I think it was Welch. I know it was. He turned around, he asked me if my hands had turned blue yet."). She did not speak on the journey and did not recall if the transporting officer made any statements. *Id*. Officer Suppelsa reported that *he* was the officer who transported Plaintiff to the jail and once asked her if the handcuffs were too tight; she did not respond. (Doc. 63-1, at 3). Officer Suppelsa further reported that, at the jail, Plaintiff

refused to change into her jail uniform, answer any booking questions, or be fingerprinted. *Id.* Plaintiff did not recall if she refused to change into her uniform or refused to answer booking questions, but did recall refusing to be fingerprinted. (Bower Depo., at 128). Officer Suppelsa charged Plaintiff with assault, obstructing official business, and domestic violence. (Doc. 63-1, at 3). Following her release from jail, Plaintiff did not seek any medical treatment for her hands or wrists. (Bower Depo., at 133-34). Defendant MPD Chief Casey Joy was not present at Plaintiff's residence during the encounter and did not participate in her arrest. *Id.* at 104.

Officer Suppelsa spoke at the arraignment and detailed the circumstances surrounding Plaintiff's arrest. (Doc. 63-5, at 1, Suppelsa Depo., Ex. 5) (court transcript). Officer Suppelsa asked the court for a full cash bond due to "numerous domestics" at Plaintiff's home, the close proximity between Bridget's and Plaintiff's homes, Plaintiff's "significant financial means", and her known "issues with alcohol and substance abuse". *Id.* at 1. He testified that he responded to one other domestic dispute at Plaintiff's home in the past and noted that other officers had responded to incidents in the past as well. *Id.* The court issued a temporary protective order. *Id.* at 3.

*January 2018 Wellness Check*

Chief Joy responded to a wellness check at Plaintiff's residence on January 30, 2018. (Doc. 64-24, at 1, Bower Depo., Ex. X) (police report). Chief Joy's report indicated that a pizza delivery driver contacted MPD reporting that a woman at Plaintiff's address seemed confused and highly intoxicated. *Id.* Plaintiff recalled seeing Chief Joy at her door and him asking her if she was okay. (Bower Depo., at 171). She maintains she was not intoxicated. *Id.* Chief Joy indicated that he observed signs of intoxication such as Plaintiff "swaying back and forth" while speaking in slurred, broken speech. (Doc. 64-24, at 1). He offered assistance, but Plaintiff refused. *Id.* Chief Joy went to the pizza shop and requested the driver fill out a witness statement. *Id.* The driver agreed and

explained that, when she arrived, Plaintiff took some time to open the door and it sounded as though she stumbled or fell down some steps. *Id*. at 2. The driver stated that when Plaintiff answered the door, she seemed very intoxicated and had no idea what the driver was doing there. *Id*. After handing the witness her credit card, she closed the door without taking her pizza. *Id*.

*State's July 2018 Motion to Dismiss*

In July 2018, the State filed a Motion for Leave to Dismiss and proposed judgment entry regarding Plaintiff's charges. (Doc. 64-23). In the document, the prosecutor checked boxes indicating that, upon further investigation, the State had additional evidence which raised reasonable doubt as to Plaintiff's guilt and there was sufficient evidence to substantiate her claim of defense. *Id*. The prosecutor explained that the "victim no longer wishes to testify & witness is essential for State's case". *Id*. Further, the prosecutor noted that Plaintiff completed an alcohol and anger assessment and paid court costs. *Id*. The judge signed the judgment entry dismissing the case *id*., and the court issued an expungement order in October 2018 (Doc. 64-19).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by

7

'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials").

DISCUSSION

Remaining in this lawsuit are first, Plaintiff's Section 1983 claims against Officers Welch and Suppelsa for: (1) excessive force; (2) false arrest; (3) malicious prosecution; (4) perjury; (5) slander; and (6) defamation – in violation of the Fourth and Fourteenth Amendments. (Doc. 1, at ¶¶30-45). Next are Section 1983 claims against Chief Casey Joy and the Marblehead Police Department for deliberately indifferent policies, practices, customs, training, and supervision in violation of the Fourth and Fourteenth Amendments. *Id*. at ¶¶46-55. There is also a Section 1983 claim against the Village of Marblehead and the Marblehead Police Department under *Monell* and *Leach*. *Id*. at ¶¶56-64. And, finally, a Section 1983 claim as to all defendants for malicious prosecution. *Id*. at ¶¶65-76. The Court addresses each claim in turn and groups them together by defendant for clarity.

Under Section 1983, "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured". 42 U.S.C. § 1983. To survive summary judgment in a Section 1983 claim, a plaintiff must prove that some conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Acting under color of state law means that the defendant must have exercised power "possessed by virtue

of state law and made possible only because the wrongdoer is clothed by the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

A defendant in a Section 1983 action may be protected against such a claim by qualified immunity. "Qualified immunity shields government officials from civil liability in the performance of discretionary functions so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Fettes v. Hendershot*, 375 F. App'x 528, 531 (6th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Further, qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

A plaintiff bears the burden of showing Defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). Once an officer raises qualified immunity, the plaintiff must prove: (1) the officer's conduct violated a constitutional right; *and* (2) the right was "'clearly established' to the extent that a reasonable person in the officer's position would know the conduct complained of was unlawful." *O'Malley v. City of Flint*, 652 F.3d 662, 667 (6th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

<u>Claims Against Officers Welch and Suppelsa in their Official and Individual Capacities</u>

In Section V of her Complaint, Plaintiff asserts a cause of action under Section 1983 against Officers Welch and Suppelsa for: (1) excessive force; (2) false arrest; (3) malicious prosecution; (4) perjury; (5) slander; and (6) defamation – in violation of the Fourth and Fourteenth Amendments. (Doc. 1, at ¶¶30-45). In support of their Motion for Summary Judgment, Defendants assert various defenses to these claims, including qualified immunity. (Doc. 65, at 20-25). For the

following reasons, the Court finds that Officers Welch and Suppelsa are entitled to summary judgment on each claim.

*Excessive Force*

In her Complaint, Plaintiff – very broadly – asserts that Officers Welch and Suppelsa used excessive force against her during her arrest. (Doc. 1, at ¶¶30-45). She recounts her rights under the Fourth and Fourteenth Amendments of the Constitution, arguing she is protected by these "clearly established rights" against the use of excessive force. *Id*. at ¶¶35-37. However, that is as far as her excessive force "argument" goes. The Complaint does not allege what, if any, injuries she sustained through the officers' use of excessive force, or exactly what type of "force" officers used. *See generally* Doc. 1. Her response in opposition to Defendants' Motion does not offer any clarity. In fact, she does not discuss "excessive force" within the document, aside from repeating the claim from her Complaint. *See* Doc. 68; *id*. at 12-13 ("Plaintiff alleges that Officers Suppelsa and Welch deprived her of her Fourth Amendment and Fourteenth rights, when the officers . . . used excessive force[.]"). The Court cannot find a factual dispute here because Plaintiff fails to provide to any specific evidence of excessive force used by Officers Welch or Suppelsa. She does not argue she was physically harmed in any way by Officers Welch and Suppelsa and produces no evidence to suggest such.

Defendants rebut the excessive force claim by assuming Plaintiff intended to bring a claim asserting her handcuffs were on too tight. (Doc. 65, at 27-29). However, as far as the Court can tell, Plaintiff made no such claim. Assuming, *arguendo*, Defendants are correct – this is what Plaintiff *meant* to argue – her claim still fails. In order to survive summary judgment on an excessive force claim alleging misuse of handcuffs, Plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) she notified officers that the handcuffs were too

10

tight; (2) the officer ignored her complaints; and (3) she had some physical injury from the handcuffs. *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005). Plaintiff has produced no evidence to support any of these necessary elements. In fact, Plaintiff herself testified that she did not remember the technique used to place her in handcuffs. (Bower Depo., at 125). She testified the officers did not punch or hit her prior to her being placed in a patrol car, nor did they do "anything physical", other than placing her in in the handcuffs. *Id*. at 126. She also maintained Officer Welch transported her to jail, and she was certain he asked if her hands were blue. *See id*. ("I think it was Welch. I know it was. He turned around, he asked me if my hands had turned blue yet."). She did not make any statements on her way to the jail, including any complaint of tight handcuffs. *Id*. at 127 ("I know I didn't say one word."). Following her release from jail, Plaintiff did not seek any medical treatment for her hands or wrists. *Id*. 133-34. Plaintiff thus fails to demonstrate a genuine issue of material fact as to any of the three elements of a misuse-of-handcuffs excessive force claim. *See Lyons*, 417 F.3d at 575-76.

Because Plaintiff has failed to demonstrate the officers' conduct violated her constitutional rights, Officers Welch and Suppelsa are shielded by qualified immunity and are entitled to summary judgment on Plaintiff's claim of excessive force in violation of Section 1983. *O'Malley*, 652 F.3d at 667.

*False Arrest*

Defendants argue Plaintiff's claims of false arrest and malicious prosecution under Section 1983 as to Officers Welch and Suppelsa fail as a matter of law because probable cause existed to believe a criminal offense took place. The Court agrees.

In order to prevail on a claim of false arrest under Section 1983, Plaintiff is "required to prove that the officers lacked probable cause to arrest [her]". *Robertson v. Lucas*, 753 F.3d 606,

11

615 (6th Cir. 2014). Importantly, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "While the facts underlying probable cause, if in dispute, must be submitted to a jury, probable cause determinations are legal determinations." *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005). Further, "where only one reasonable reading of the facts is possible, i.e., where the facts that relate to probable cause are not in dispute, the question of probable cause retains its legal character and should be decided by the judge." *Id*.

Plaintiff acknowledges these legal principles and asserts that every "fact" surrounding her arrest and prosecution is in dispute. (Doc. 68, at 14-16). She first asserts there is a dispute as to who the original 911 caller was – she argues it was her, and states Defendants assert it was Paul Sowers. *Id*. at 14. Who placed the first 911 call is immaterial – the undisputed facts demonstrate that both Plaintiff and Paul Sowers called 911. (Suppelsa Depo., at 22); (Welch Aff., at ¶¶2-3). The important thing here is that police were summoned to Plaintiff's residence by *someone* alleging an active dispute. In other words, the police did not randomly stumble into Plaintiff's living room – they had cause to be there. Plaintiff seems to insinuate that, because she called 911 first, she could not be the primary aggressor and should not have been arrested. This implication is not grounded in law.

Next, Plaintiff argues officers lacked probable cause because "[t]here were no signs of any physical violence to the 'child victim', rather there were signs of physical violence to the Plaintiff." (Doc. 68, at 14). In support, Plaintiff points to photographs depicting bruising to her legs and forearms. *Id*. (citing Doc. 64-11). These photographs were taken approximately five days after the altercation. (Bower Depo., at 117-18). While these photographs certainly demonstrate that Plaintiff had visible injuries five days after the altercation, they more importantly: (1) fail to demonstrate if

12

Bridget Sowers did (or did not) have physical injuries; and (2) fail to show these bruises existed at the time of her arrest or were visible to officers. Again, probable cause determinations are based upon the facts known to the officers *at the time of arrest. Devenpeck*, 543 U.S. at 152. Officer Welch testified that Plaintiff did not have any visible injuries at the time of arrest. (Welch Aff., at ¶5). He further testified that Bridget *had* visible injuries at that time. *Id*. at ¶7. Plaintiff does not submit any evidence to refute the existence of Bridget's injuries or Officer Welch's observation thereof. Thus, the information available to the officers at the time of arrest indicated that Bridget had physical injuries and Plaintiff did not.

Plaintiff next asserts that the officers arrested her based on a "predisposed bias and assumptions made on reliance of gossip" and their assumption that she was intoxicated was unsubstantiated. (Doc. 68, at 15). Officer Suppelsa testified Plaintiff had obvious signs of intoxication. (Suppelsa Depo., at 31). Bridget Sowers submitted a written statement explaining Plaintiff was intoxicated. (Doc. 63-1, at 1). The officers' observations, coupled with their specialized training in the matter, constitute probable cause to believe that Plaintiff was intoxicated. Regardless, Plaintiff was not arrested for being intoxicated. Plaintiff's sobriety (or inebriation) is totally immaterial to this case. The only relevance alcohol consumption has in the matter is that Plaintiff and Bridget Sowers both assert their argument and subsequent altercation escalated when Bridget accused Plaintiff of drinking too much. (Bower Depo., at 122); (Welch Aff., at ¶6). This fact is not in dispute.

Finally, Plaintiff argues that "[n]o probable cause existed whatsoever, no reasonable mind could believe that the alleged victim in this matter had even been touched". (Doc. 68, at 15). She further calls the investigation "unreasonable" and handled "so poorly", one "based on a lie where zero investigation was done". *Id*. at 7, 15. These are Plaintiff's opinions, not facts.

13

The officers had probable cause to effectuate an arrest based upon the evidence they observed and gathered at the scene, all of which is undisputed. Both Plaintiff and Bridget Sowers admitted a physical altercation took place. (Bower Depo., at 113-14); (Welch Aff., at ¶¶5-6). Officer Welch observed signs of injury to Bridget's face. (Welch Aff., at ¶7). Plaintiff did not have visible injuries *at the time of her arrest*. (Welch Aff., at ¶5). Plaintiff herself admitted she only told officers that Bridget pulled her hair and she was not completely truthful as to the extent of any other injuries in order to protect Bridget from being arrested. (Bower Depo., at 113-14). Plaintiff's allegation that the officers did not conduct any investigation is simply untrue – these facts were developed by the officers' on-scene investigation. For these very basic reasons, probable cause existed for the officers to believe that a domestic violence assault had taken place and Plaintiff was the primary aggressor. This legal conclusion holds even assuming Plaintiff's version of the events is completely true – that Bridget lied to police on scene about the events which transpired. Just because Plaintiff denied being the primary aggressor, does not mean that the officers did not have probable cause on scene to believe otherwise – that is what matters here.

Probable cause also existed to support a charge of obstructing official business. The charge resulted from Plaintiff's refusal to get dressed inside her home and her conduct at the jail. Officers Welch and Suppelsa testified Plaintiff took several minutes to answer the door and, when she did, ignored repeated commands to get dressed and even began drying her hair. (Welch Aff., at ¶14); (Suppelsa Depo., at 27-29). Plaintiff acknowledged she took a shower while officers were still on scene and answered her front door in a towel. (Bower Depo., at 123-24). She could not remember if she dried her hair. *Id*. at 124. Plaintiff admitted she refused to be fingerprinted at the jail. *Id*. at 128 ("I did refuse to be fingerprinted."). She did not recall if she refused to change into her uniform or refused to answer booking questions. *Id*.

14

For these reasons, probable cause existed to support each of Plaintiff's charges. Thus, because Plaintiff has failed to demonstrate the officers' conduct violated her constitutional rights, Officers Welch and Suppelsa are shielded by qualified immunity and are entitled to summary judgment on Plaintiff's claim of false arrest in violation of Section 1983. *O'Malley*, 652 F.3d at 667.

*Malicious Prosecution*

Defendants next argue that Plaintiff's claim of malicious prosecution fails as a matter of law because her criminal case was not resolved in her favor. (Doc. 65, at 25-27). The Court finds her claim fails for this reason and more.

"Under federal law, a plaintiff must prove four elements to establish a malicious prosecution claim: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor." *Jones v. Clark Cty., Ky.*, -- F.3d --, 2020 WL 2520267, at *4 (6th Cir.) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)). The first element here is undisputed – Officers Welch and Suppelsa initiated a criminal prosecution against Plaintiff for domestic violence, assault, and obstructing official business. The third element – a deprivation of liberty – is also not disputed by either party. To the second element, the Court already concluded Officers Welch and Suppelsa had the probable cause necessary to support each of Plaintiff's charges. Thus, Plaintiff cannot satisfy the second element.

Plaintiff is also unable to satisfy the fourth element – that the criminal proceeding must be resolved in her favor. In *Ohnemus v. Thompson*, the Sixth Circuit held that, "[t]he termination [of

15

proceedings] must go to the merits of the accused's professed innocence for the dismissal to be 'favorable' to him." 594 F. App'x 864, 867 (6th Cir. 2014). And "the dismissal must be one-sided and not the result of any settlement or compromise." *Id*. Here, Plaintiff was not acquitted of the charges and the prosecutor's reasons for dismissal do not amount to a favorable termination. *See* Doc 64-23 (Motion for Leave to Dismiss). The entry reflects that Bridget refused to testify against her mother and that Plaintiff completed anger and alcohol assessments. *Id*. She was also ordered to pay court costs. *Id*. The prosecutor's comments do not indicate Plaintiff was absolved of any wrongdoing. Rather, the comments indicate the State could not move forward with the case without the victim's cooperation. *Id*.

Here again, Plaintiff has failed to demonstrate the officers' conduct violated her constitutional rights. Thus, Officers Welch and Suppelsa are shielded by qualified immunity. Moreover, because Plaintiff fails to satisfy two of the necessary elements to establish a malicious prosecution claim, Officers Welch and Suppelsa are entitled to summary judgment on Plaintiff's claim of malicious prosecution in violation of Section 1983. !

*Perjury, Slander, and Defamation*

Plaintiff next alleges Officers Welch and Suppelsa "slandered, defamed portrayed the Plaintiff in a false light with malicious lies." (Doc. 1, at ¶44). She alleges the officers "conspired and/or acted in concert to submit perjured testimony in open court[.]" *Id*. at ¶25. Specifically, she refers to Officer Suppelsa's statements: his "lies to the Judge, the Honorable Court and to a courtroom full of citizens", regarding multiple domestic violence calls to Plaintiff's home, her drug and alcohol use, and her significant financial means. *Id*. at 5. Defendants' assert Officer

16

Suppelsa's statements are absolutely privileged. (Doc. 65, at 33-36). The Court agrees, and also finds Plaintiff's claims, as pled, fail for a more obvious reason.

!       Plaintiff's claims for defamation and/or slander fail because they are state law claims and do not involve the violation of any rights secured by the federal Constitution or the laws of the United States – they are not actionable under Section 1983. *See Paul v. Davis*, 424 U.S. 693, 712-13 (1976) (defamation claim not cognizable under Section 1983); *see also Azar v. Conley*, 456 F.2d 1382, 1389 (6th Cir. 1972) ("the Civil Rights Act does not give rise to a cause of action for slander."). This is so, because harm or injury to reputation, even if inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" interests protected by the Due Process Clause. *Paul*, 424 U.S. at 712. Here, Plaintiff pled Section 1983 claims for slander and defamation against Officers Welch and Suppelsa – she did not plead state law claims[1]. *See* Doc. 1, at ¶¶30-45. Thus, her claims fail as a matter of law.

!       Plaintiff's perjury claim does not fare much better. Section "1983 'does not allow recovery of damages against a private party for testimony in a judicial proceeding' even if the testimony constituted perjury (and even assuming the witness was acting under color of state law)." *Doe v. Boland*, 630 F.3d 491, 499 (6th Cir. 2011) (quoting *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983)). *Briscoe* specifically extended the privilege of absolute immunity to police officers testifying in judicial proceedings. *See generally Briscoe*, 460 U.S. 325.

---

1. Even assuming Plaintiff properly pled these as state law claims, they would also fail as a matter of law. This is so because, under Ohio law, any statements made by Officer Suppelsa during a judicial proceeding are absolutely privileged. *See M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 203, 209-10 (Ohio 1994); *see also Hecht v. Levin*, 613 N.E.2d 585, 587 (Ohio 1993) ("A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears."). Because Officer Suppelsa's "defamatory" statements were made during his courtroom testimony, and were reasonably related to the probable cause to support Plaintiff's charges, and the amount of her bond, they are absolutely privileged under Ohio law.

Moreover, Plaintiff fails to present *any* facts to support claims of slander, defamation, or perjury as to Officer Welch. Her claims only address Officer Suppelsa's testimony at her preliminary hearing. *See* Doc. 1, at ¶¶30-45; *see also* Doc. 68, at 16-18. There is no indication Officer Welch was even present at the hearing, and Plaintiff certainly does not offer proof that he was. Plaintiff is also unable to rope Officer Welch into a perjury "conspiracy" claim. This is so, because "conspiracy claims must be pled with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Vague and conclusory allegations are exactly what the Court is presented with here.

Plaintiff's claims of slander, defamation, and perjury fail for several reasons. Most obviously, slander and defamation are not actionable under Section 1983. Nevertheless, she has failed to present *any* facts to support these claims against Officer Welch. She has also failed to demonstrate Officer Suppelsa's testimony during her preliminary hearing violated her constitutional rights and failed to show he is not entitled to absolute immunity for his testimony. Thus, Officers Suppelsa is shielded by qualified and absolute immunity as to these claims.

For these reasons, Officers Welch and Suppelsa are entitled to summary judgment on Plaintiff's claims of slander, defamation, and perjury in violation of Section 1983.

Claims against Chief Casey Joy, the Marblehead Police Department, and the Village of Marblehead

In Section VI of her Complaint (Doc. 1), Plaintiff brings a cause of action under Section 1983 against the Chief Casey Joy and the MPD for "deliberately indifferent policies, practices customs, training, [and] supervision" – in violation of the Fourth and Fourteenth Amendments.

(Doc. 1, at ¶¶46-55). In Section "VI[I]" Plaintiff brings a cause of action under Section 1983 against the Village of Marblehead and MPD under *Monell* and *Leach*. *Id*. at ¶¶56-64. Finally, in Section VII, she asserts another malicious prosecution claim under Section 1983 as to *all defendants*. *Id*. at ¶¶65-76.

*Supervisory Liability of Chief Casey Joy*

Within Section VI, Plaintiff raises a Section 1983 claim for supervisory liability against Chief Joy in his individual capacity. For the following reasons, the Court finds Chief Joy is entitled to summary judgment on this claim.

"Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). Rather, the supervisor must have actively engaged in unconstitutional behavior. *Gregory v. City of Louisville*, 444 F.3d at 725, 751 (citing *Bass*, 167 F.3d at 1048). "Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Id*. "A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874.

Here, as the Court previously determined, Officers Welch and Suppelsa did not engage in unconstitutional conduct. Thus, Plaintiff is unable to show that Chief Joy authorized, approved, or

acquiesced in such. Moreover, Chief Joy was not present at Plaintiff's residence during the encounter in question and did not participate in her arrest. (Bower Depo., at 104).

Plaintiff alleges Chief Joy's culpability mainly stems from "gossip chats" he had with Rhonda Sowers which – Plaintiff asserts – improperly infected Officers Welch and Suppelsa with a bias against her. (Doc. 68, at 10-11). Gossip chats are not constitutional violations. *Azar*, 456 F.2d at 1389. Moreover, Plaintiff has not presented any evidence to show that these "gossip chats" ever even occurred or if Chief Joy communicated the substance of any such chats to Officers Welch and Suppelsa.

Wellness checks are also not constitutional violations, especially where Plaintiff is unable to show that any part of the wellness check infringed on her constitutional rights. Chief Joy was advised of a 911 call regarding Plaintiff's strange behavior from an uninvolved pizza delivery driver. (Doc. 64-24, at 1). He responded to the residence and spoke with Plaintiff; he never entered her home. *Id*. After a brief conversation, Plaintiff shut her door and Chief Joy left the scene. *Id*.

Because Plaintiff has failed to demonstrate Chief Joy's conduct violated her constitutional rights, he is shielded by qualified immunity and is entitled to summary judgment on Plaintiff's claim of supervisory liability in violation of Section 1983.

*Malicious Prosecution – All Individual Defendants*

Here, Plaintiff alleges all "Individual Defendants" violated her Fourth and Fourteenth Amendment rights "to be free from malicious prosecution without probable cause and without due process when they worked in concert to secure false charges against her which were later ratified and not corrected by Defendant Village or Defendant Chief Joy[.]" (Doc. 1, at ¶68). The Court earlier resolved Plaintiff's malicious prosecution claims against Officers Welch and Suppelsa and now addresses the claim as to Chief Joy. He too is entitled to summary judgment on this claim.

20

As noted, "a plaintiff must prove four elements to establish a malicious prosecution claim: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the decision to prosecute;" (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was "resolved in the plaintiff's favor." *Jones*, 2020 WL 2520267, at *4. The Court has made determinations as to three of these elements – probable cause existed to support each of Plaintiff's charges; Plaintiff suffered a deprivation of liberty; and the criminal proceeding was not resolved in Plaintiff's favor. Here, the Court turns to the first element and ultimately finds Plaintiff's claim of malicious prosecution against Chief Joy fails to meet this element as well.

To succeed in proving the first element, Plaintiff must show that *each defendant* "made, influenced, or participated in the decision to prosecute." *Jones*, 2020 WL 2520267, at *4. She falls far short of meeting that burden here. Plaintiff has not pled or offered any facts to even suggest, let alone prove, that Chief Joy made, influenced, or participated in the decision to prosecute her. *See generally* Doc. 1. As far as Chief Joy's involvement, Plaintiff alleges that his "gossip chats" with Rhonda Sowers influenced Officers Welch and Suppelsa's decision to arrest. (Doc. 68, at 17-18). However, "[t]o be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sykes*, 625 F.3d at 308, n.5. Here, Plaintiff has failed to show Chief Joy participated in her arrest in any way. She alleges the "gossip chats" somehow implanted a bias on Officers Welch and Suppelsa and influenced their decision to arrest. (Doc. 68, at 10-11). Again, Plaintiff has not presented any evidence to show that these "gossip chats" ever occurred or if Chief Joy even

communicated the substance of any such chats to Officers Welch and Suppelsa – this critical link is missing.

Because Plaintiff fails to satisfy the basic elements necessary to bring a malicious prosecution claim under Section 1983 against Chief Joy the Court finds he Defendants is entitled to summary judgment on this claim.

Monell *Claim against the Village of Marblehead and MPD*

To prevail on a Section 1983 *Monell* claim against the Village under the Fourth and Fourteenth Amendments, Plaintiff must show (1) that she suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation. *Monell v. Dep't. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-92 (1978). Said differently, Plaintiff has the burden of identifying and proving that a Village policy or custom caused a violation of her constitutional rights. *Bd. of Cty. Comm'r of Bryan Cty, Okla. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). Here, Plaintiff has not set forth any evidence to support either element.

To the first *Monell* element, the Court above concluded Plaintiff has not shown that she suffered a constitutional violation by any Defendant. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson*, 753 F.3d at 622 (citing *Scott v. Clay Cty., Tenn*., 205 F.3d 867, 879 (6th Cir. 2000)). Her claim fails on this missing piece alone.

Even were the Court to reach the second element, Plaintiff has also not shown that a policy or custom, enacted or adopted by the Village, caused any constitutional violation. Specifically, she has not identified or brought forth to the Court any written policy which she alleges caused a violation of her constitutional rights. To customs and practices, Plaintiff broadly asserts that the Village, acting through MPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional and illegal conduct of the individual Defendants named in this

complaint. (Doc. 68, at 11-12). However, Plaintiff does not identify a single incident where the Village received and ignored a report of police misconduct or that any pattern or practice of such existed – including the events surrounding her arrest. Plaintiff has not shown that she made a complaint on the matter, or that any complaint was ignored.

Plaintiff has not presented evidence that she suffered a constitutional violation, nor has she presented *any* evidence to show that a Village policy, custom, or practice caused a violation of her constitutional rights. For these reasons, Plaintiff's *Monell* claim against the Village and MPD fails as a matter of law and Defendants are entitled to summary judgment on this claim.

### CONCLUSION

Plaintiff's claims are legally deficient in some areas and totally unsupported by evidence in others. Thus, for the reasons contained herein, good cause appearing, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. 65) be, and hereby is GRANTED.

 s/James R. Knepp II
United States Magistrate Judge